UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------- x

UNITED STATES OF AMERICA

                                      16 Cr. 406 (MKB)

               -against-

RICKY VARGAS,

                            Defendant.

------------------------------------------------------------------------- x

**SENTENCING MEMORANDUM FOR**
**DEFENDANT RICKY VARGAS**


MICHAEL HUESTON, ESQ.
*Attorney for Defendant*
16 Court Street, Suite 1800
Brooklyn, New York 11241
(718) 246-2900


Dated:       Brooklyn, New York
               July 27, 2018

## SENTENCING MEMORANDUM FOR
## DEFENDANT RICKY VARGAS

**A.    Introduction**

Defendant Ricky Vargas places before the Court the following issues relating to his appropriate sentence pursuant to Fed. R. Crim. P. 32.

On July 6, 2017, Mr. Vargas pled guilty to Counts One and Two of a five-count Indictment.  Count One charges that between June 1, 2014, and February 6, 2015, Ricky Vargas, together with others, conspired to distribute and possess with intent to distribute heroin, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A)(i).  Count Two charges that between February 6, 2015, and February 7, 2015, Ricky Vargas, together with others, conspired to kidnap, abduct, and carry away, for ransom and reward and otherwise, John Doe # 1 and Jane Doe # 1, and to transport them in interstate and foreign commerce, travel in interstate and foreign commerce and use the means of interstate and foreign commerce, specifically, cellular telephones, in committing and in furtherance of the commission of the offense, in violation of 18 U.S.C. § 1201(a)(1) and (c).  *See* Presentence Investigation Report ("PSR") at ¶¶ 1 and 2.  Mr. Vargas' total offense level is 34; he has a Criminal History Category of I; and his advisory Guidelines range is 151 to 188 months.  *See* PSR at ¶¶ 77, 81, 133.

Mr. Vargas has objected to the PSR as stated in Part B below.  However, none of his objections change the total or adjusted offense level of 34 agreed to by the parties and set forth in the PSR.

Mr. Vargas respectfully requests that the Court impose a non-Guidelines sentence on Count One of 120 months of incarceration and on Count Two of one day of incarceration.

The proposed sentence is reasonable considering the objectives of 18 U.S.C. § 3553(a), including Mr. Vargas' history and characteristics, the nature of the offense, the need for general and specific deterrence, the need to provide educational or vocational training, and to avoid sentencing disparities. In particular, Mr. Vargas asks the Court to focus on his work history, youth, substance abuse history, family ties, and harsh conditions of confinement.

**B. Comments and Objections to the Presentence Report**

By letter dated June 7, 2018, counsel submitted a letter to the Probation Department detailing the defense's objections and comments to portions of the PSR. A copy of that letter with its exhibits is attached as Exhibit 1.

Significantly, Mr. Vargas maintains that he, himself, did not possess a weapon in relation to the kidnapping. The Court may recall that the defense submitted, with its pretrial motions, an application for an order directing the government to immediately disclose all *Brady/Giglio* information, including all witness statements pursuant to 18 U.S.C. § 3500 concerning the kidnapping allegations set out in Counts Two through Five of the indictment; specifically pertaining to the allegations that: (1) the kidnapping started in Manhattan, "[o]n or about February 7, 2015, [when] defendant Ricky Vargas showed John Doe # 1 a gun and told him to get inside a vehicle containing defendants Hillary Calle and Monica Vargas[,]"; and (2) then continued on into New Jersey and eventually Queens. *See* Docket, Document Nos. 60-1 through 60-6.

As explained in the defense's motions, prior to this indictment Mr. Vargas was prosecuted in Queens County Criminal Court for assaulting, robbing, and attempting to kidnap John Doe # 1 in Queens, New York, on February 7, 2015. The case is now closed after being dismissed; however, it involves the same kidnapping. Yet the allegations in

that case contradict this indictment and the PSR by failing to allege that Mr. Vargas

"showed John Doe # 1 a gun" or the kidnapping occurred outside of Queens.  These

omissions happened twice, no less, when defendants Monica Vargas and Hillary Calle

where charged in a separate Queens County Criminal Court case.  Again there was no

mention of Mr. Vargas showing a firearm or the kidnapping occurring until the

defendants and John Doe # 1 and Jane Doe # 1 reached Queens.  Clearly, the Queens

Criminal Complaints[1] materially contradict the PSR's assertions at:

> ¶ 12:  Ricky Vargas approached John Doe # 1, showed him a gun tucked in his
> waistband and forced John Doe # 1 and Jane Doe # 1 to get into Calle's
> vehicle, where Calle and Monica Vargas were waiting.
>
> John Doe # 1 agreed to enter the car because he was scared for his life.
>
> ¶ 14:  Lee put a gun to John Doe # 1's head and pulled the trigger; John Doe # 1
> heard a 'click' but the gun jammed and no shots were fired.  Lee hit John
> Doe #1 in the head and face with his gun.
>
> Ricky Vargas yelled shoot him.

There is no plausible explanation as to the absence of these "key" facts in either

complaint, except for the obvious: they are not true.  Indeed, the statement regarding

defendant Lee (which would constitute attempted murder) is not even mentioned in the

overt acts set forth in this indictment, which, to put it mildly, undermines its credibility.

Finally, there is a video of the incident in Queens, which supports the defense's

version of events and is helpful in putting the offense in its proper context.   The video

shows the victims' demeanor, prior to the arrival of defendant Lee, which is neither one

of alarm nor fear.  They leave the car unrestrained, walk on the sidewalk, talk to each

other, talk to the defendants, use a cell phone, and smoke cigarettes.  Indeed, at one point,

---

[1] The exhibits are attached to the defense's objections to the PSR at Exhibits A and B as well as the
defense's pretrial motions at documents 60-2 and 60-3.

Jane Doe # 1 is left alone in the car with the pregnant defendant Calle.  These are not people who are acting as if they are being held at gunpoint at a location.  The situation only escalates when defendant Lee and another individual arrive at the scene.  Then John Doe # 1 pushes Mr. Vargas and a fight ensues before he is able to run away.

Given these material contradictions, the assertions that Mr. Vargas showed either John Doe # 1 or Jane Doe # 1 a gun, yelled shoot him, or the kidnapping occurred any place other than Queens, should be stricken from the PSR.

**C.     Mr. Vargas' History and Characteristics**

Information relating to Mr. Vargas' background and characteristics is detailed in the PSR at ¶¶ 86-114, and his letters of support at Exhibit 2.  The following discussion draws from this source material, and other material where noted.

Mr. Vargas is a 26-year old citizen of the United States.  He was born to the marital union of Ricardo Vargas and Maria Medriano.  He has a younger brother and sister.  He has a six year-old son with his former girlfriend Andrea Bosch.  His son lives with his mother in New Jersey.  Before Mr. Vargas' arrest and detention he financially supported his child.  Other than Mr. Vargas' father, who suffered a heart attack five months after his son's arrest, his family has no serious health issues.  Mr. Vargas' family is aware of the case and supportive.

Regarding substance abuse, Mr. Vargas started experimenting with marijuana at 15, developing from an occasional to a habitual user, and smoked until two months before his arrest.  Mr. Vargas has never received drug treatment, but he is amenable to treatment, and his mother believes that her son had a problem with marijuana.

Mr. Vargas dropped out of high school to earn money to support his son.  Until his incarceration he worked consistently, including as a sales associate, co-manager at a

4

footwear and apparel store, and a laborer and supervisor doing asbestos removal.  Ms. Bosch describes him as a "hard working man" who was trusted with making deposits at a store where he was promoted when they lived in Florida.  Ms. Bosch also states that Mr. Vargas became a foreman certified as an asbestos removal supervisor.

Mr. Vargas' former supervisor, Segundo Ruales, informs the Court, "Ricky is a very hardworking, respectful man that always puts other before himself and tried giving a helping hand in any way he can."  While his former co-worker, Erick Mendoza, writes, "[Ricky] made sure everyone was doing everything right.  Not dirty, illegal or life threatening.  Throughout my time knowing Ricky I noticed he is a very helping, kind, grown educated, hard working, family man who has more of his future ahead of him.  He is a teacher and a learner everyday just like we all are.  He is a positive role [model] to everyone I know including my family and my son."

In her letter to the Court, Ms. Bosch describes her early relationship with Mr. Vargas when they were members of the Living Word Church in Florida where they helped in church services and bible studies, attended youth camp, collected donations for homeless shelters, and visited nursing homes.  In her letter, she also describes Mr. Vargas as a "responsible", "loving" father who is actively involved in their son's life and his incarceration has completely altered their lives both emotionally and financially.   Mr. Vargas' mother echoes Ms. Bosch's positive sentiments, adding that he is "amazing" with his son, and "good hearted, always willing to help, and a good person."  A friend of Ms. Bosch observes in her letter that they had "a beautiful family bond" and that Mr. Vargas was a "devoted" father and "role model" who made his son "glow."

Furthermore, Mr. Vargas' current girlfriend, Candace Leacock, writes:

There is an outstanding young man in Ricky Vargas. I have found him to be a man of truth, honesty and integrity. He is deeply kind compassionate and loving in his treatment and respect for others. As a Christian young woman these characteristics pull on me and make me want to become a better woman, friend daughter and human. He encourages me to stand up for myself and to communicate when I feel like I'm not being true to self. In the time I have known him he has always been a light to my life. I truly believe there is a greater purpose for his life than just being behind bars. He is intelligent, well spoken and comes from a loving family that supports him. He is a supportive individual a great dad and he never stays down for long. I admire him for his resilience as this can't be an easy process for anyone and I fall more in love with his character everyday because of who he was and who he is becoming. In him see a husband and a partner. A man who has witnessed what he's lost and is willing to make positive changes moving forward into the next stages of life who wishes to end the cycle of recidivism in young men and be a voice of reason to those who may want to go down a similar path. Please don't allow this first time offense to mold the rest of his life. We can't erase what was done and ever action does have consequences but I do want to respectfully ask for your compassion during this process.

Mr. Vargas' grandmother writes, "[Ricky] deserves [a second chance] because he has already learned from his mistakes and is very sorry for his mistakes and is very sorry now he wants to see ahead a good future for him and his son."

For his part Mr. Vargas has turned a page in his life, having quit the Crips and accepted responsibility for his conduct in this case, and will address the Court at his sentencing hearing.

**D.     Offense Conduct and Adjustment to Incarceration**

Mr. Vargas has been incarcerated at the Metropolitan Detention Center ("MDC") since his August 4, 2016 arrest. At the MDC, he has completed courses in basic fitness, sport officiating rules, cardio training, and finance. Mr. Vargas has also been employed as an orderly and kitchen aide at the MDC.

With respect to the instant offense, Mr. Vargas is best characterized as an offender with no aggravating role.  As set forth above, Mr. Vargas maintains that he, himself, did not possess a firearm regarding the kidnapping.  This is important because while Mr. Vargas has stipulated that at least one co-conspirator used a firearm in relation to the kidnapping, this assertion incorrectly portrays Mr. Vargas as an individual who would hold two people at gunpoint in a car with an infant present.  This simply did not happen, and the Queens Criminal Complaints prove it.

**E.     Mr. Vargas' Sentence Must Not Be Greater Than Necessary to Achieve the Goals of 18 U.S.C. § 3553(a) and Should Take into Account His History and Characteristics**

Regarding One Count, the minimum term of imprisonment is 10-years and the maximum sentence is life, and the Court must impose at least five years of supervised release.  Regarding Count Two, the maximum term of imprisonment is life and the Court may impose a term of supervised release of not more than five years.  Mr. Vargas faces an advisory Guidelines range of 151 to 188 months imprisonment.  Mr. Vargas has been incarcerated 24 months.

Notably some months before Mr. Vargas pled guilty in this case the government offered him and other of his codefendants a global plea offer that would have allowed Mr. Vargas to plead guilty to 21 U.S.C. § 841(b)(1)(B), with a total offense level of 33 and advisory Guidelines range of 135 to 168 months.  Mr. Vargas accepted the offer.  But not everyone else did, so the offer expired.  While the defense is mindful that the Court must not participate in plea discussions, pursuant Fed. R. Crim. P. 11(c)(1), this information is relevant under 18 U.S.C. § 3661, as it demonstrates Mr. Vargas' acceptance of responsibility and shows the government was comfortable with a more favorable plea.  These are factors this Court should consider.

As mentioned at the outset of the memorandum, Mr. Vargas respectfully requests that the Court impose a non-Guidelines sentence on Count One of 120 months of incarceration, and on Count Two of one day of incarceration.  Adopting this request would allow Mr. Vargas to be credited with 24 months against his 21 U.S.C. § 841(b)(1)(A) term of imprisonment.  Because, except for the one day of incarceration regarding 18 U.S.C. § 1201, the remaining 24 months Mr. Vargas has spent in official detention prior to his sentence would be applied against his 21 U.S.C. § 841(b)(1)(A) sentence.  *See* 18 U.S.C. § 3585(b) ("A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences – (1) as a result of the offense for which the sentence was imposed; . . . that has not been credited against another sentence."); *see also* 18 U.S.C. § 3584 (Multiple sentenced of imprisonment).  Whereas a sentence of time served regarding 18 U.S.C. § 1201 would not.

The Court has the authority to structure such a sentence.  *See e.g.*, *United States v. Rodriguez*, 2016 U.S. Dist. LEXIS 24676, at *9 (S.D.N.Y. 2016) ("18 U.S.C. § 3584(a) provides that '[i]f multiple terms of imprisonment are imposed on a defendant at the same time, or if a term of imprisonment is imposed on a defendant who is already subject to an undischarged term of imprisonment, the terms may run concurrently or consecutively. . . .'")  Taking this approach would ensure that Mr. Vargas is credited for the time.  *United States v. Montez-Gaviria*, 163 F.3d 697, 700-01 (2d Cir. 1998) ("The Bureau of Prisons, and not the courts, determines when a defendant's sentence starts and whether the defendant should receive credit for any time spent in custody"); and *United States v. Gonzalez*, 192 F.3d 350, 353 (2d Cir. 1999) (a court exceeded its authority in attempting

to backdate a drug defendant's sentence to date of his arrest to give him credit for time that he served in custody on *state charges* which stemmed from the same criminal activity, since Bureau of Prisons and not courts determines when defendant's sentence starts and whether defendant should receive credit for any time spent in custody.) (emphasis added).

Mr. Vargas stands before the Court at a vital crossroads in his life, and he respectfully asks the Court to take into account the following factors regarding his appropriate sentence based on the factors set forth in 18 U.S.C. § 3553(a).  This Court is not required to impose a sentence based on the advisory Guidelines or based on any policy of the Sentencing Commission that circumvents or curtails courts' roles in sentencing.  *Pepper v. United States*, 562 U.S. 476, 501 (2011).  In this case, a sentence at variance with the advisory Guidelines is appropriate because they fail to account for the critical factors in Mr. Vargas' background, which must be considered in arriving at the sentence to be imposed.  *See* 18 U.S.C. § 3553(a).

First, Mr. Vargas is aware of the seriousness of the crimes he committed, and has repeatedly expressed his remorse.  Mr. Vargas will never place himself in this position again.  He accepts full responsibility for his actions and understands the consequences of his conduct.  He has always been a productive member of society, working and filing taxes, and taking care of his son.  Mr. Vargas continues to reflect on how his actions have hurt his family, which serves as a deterrent, and, under U.S.S.G. § 4A1.3, the likelihood that a defendant will commit further offenses is an issue the Sentencing Commission views as important.

Second, while drug or alcohol dependence or abuse is not necessarily relevant under the Guidelines, *see* Guideline § 5H1.4, an effort to end drug or alcohol dependence through rehabilitation may be. *United States v. Maier*, 975 F.2d 944, 948 (2d Cir. 1992) (the Second Circuit held that the awareness of one's drug dependence "and the demonstrated willingness to act to achieve rehabilitation, thereby benefiting the individual and society," is a reason for an adjustment). Mr. Vargas is willing to participate in drug treatment, and the Court should consider this factor.

Third, Mr. Vargas is an individual with a confirmed work history. While a defendant's employment record, under the Guidelines is discouraged as a factor, *see United States v. Jagmohan*, 909 F.2d 61, 65 (2d Cir. 1990), it is a valid consideration under 18 U.S.C. § 3553(a). The time Mr. Vargas spent working demonstrates a level of seriousness and dedication to continue to better his and his family's lives.

Fourth, Mr. Vargas' parental responsibilities are a factor the Court should also consider. Again, while not ordinarily relevant under the Guidelines, *see United States v. Galante*, 111F. 3d 1029 (2d Cir. 1997) (approving a downward departure on finding that imprisonment would destroy the family unit notwithstanding availability of other parent); *United States v. Johnson*, 964 F.2d 124 (2d Cir. 1992) (approving a downward departure where the defendant was solely responsible for raising four children); *United States v. Alba*, 933 F.2d 1117 (2d Cir. 1991) (upholding downward departure where stability of close a knit family depended on defendant's continued presence), Mr. Vargas' conviction will continue to have a dramatic impact on his son in terms of their physical separation

while Mr. Vargas is incarcerated, but also with respect to Mr. Vargas' diminished

economic prospects to provide for his son as a convicted felon.[2]

Fifth, Mr. Vargas is in his twenties, and while age alone is not ordinarily relevant

in determining whether a defendant should receive a variance, *see* Guideline § 5H1.1,

Mr. Vargas' age should be viewed in the context of the other factors that make up his

offender characteristics.  While not a child at 23 when he committed the offenses, he was

still vulnerable to the impulsivity associated with youth.  Mr. Vargas has matured since

his arrest and a prolonged incarceration is not necessary.  *See e.g. United States v. Smith*,

909 F.2d 1164 (8th Cir. 1980) (downward departure justified based on age where the

defendant was sentenced as a career offender for crimes committed shortly after his

nineteenth birthday).

Finally, as noted, Mr. Vargas has been incarcerated at the MDC for two years.

His confinement conditions may be considered in determining his appropriate sentence.

*United States v. Carty*, 264 F.3d 191, 196 (2d Cir. 2001) ("pre-sentence confinement

conditions may in appropriate cases be a permissible basis for downward departures.")

*See e.g., United States v. Hernandez-Santiago*, 92 F.3d 97, 101 (2d. Cir. 1996) ("harsher

incarceration" in state facility as compared to federal facility justified sentencing

adjustment; the government did not challenge adjustment on appeal); *United States v.*

*Mateo*, 299 F. Supp. 2d 201, 212 (S.D.N.Y. 2004) (pre-sentence conditions "effectively

enhanced, to a disproportionate degree, the level of punishment contemplated to be

---

[2] NEW YORK TIMES, *Out of Trouble, but Criminal Records Keep Men Out of Work, available at* http://www.nytimes.com/2015/03/01/business/out-of-trouble-but-criminal-records-keep-men-out-of-work.html; and WASHINGTON POST, *Our criminal justice system is making it really hard for people to find jobs*, available at https://www.washingtonpost.com/posteverything/wp/2014/09/30/our-criminal-justice-system-is-making-it-really-hard-for-the-poor-to-find-jobs/?utm_term=.97c6b96fa683.

experienced by inmates in the typical case during the period of incarceration prescribed by the Guidelines.")

**F.     Conclusion**

We respectfully urge the Court to vary from the advisory Guidelines range based on the reasons set forth in this memorandum and impose a sentence on Count One of 120 months of incarceration and on Count Two of one day of incarceration.  That is a significant life-changing penalty that amply punishes Mr. Vargas for his offense conduct, maintains and encourages respect for the administration of justice, and serves as individual and general deterrents.  It is, in short, a sufficient, but not greater than necessary sentence.

Mr. Vargas respectfully reserves the right to raise additional issues, if necessary, at the time of sentencing.

Dated:         Brooklyn, New York
               July 27, 2018

Respectfully submitted,

_____s/_____
MICHAEL HUESTON, ESQ.
*Attorney for Defendant Ricky Vargas*
16 Court Street, Suite 1800
Brooklyn, New York 11241
(718) 246-2900

12

**DECLARATION OF SERVICE**

Michael Hueston, declares under penalty of perjury and pursuant to 28

U.S.C. § 1746, that the following is true and correct:

On July 27, 2018, I served the annexed Sentencing Memorandum and

Exhibits on:

Patrick T. Hein
Sarah Evans
Assistant United States Attorneys
United States Attorney for
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

[X]     BY ELECTRONIC CASE FILING
[ ]     BY EMAIL
[ ]     BY HAND
[ ]     BY FIRST CLASS MAIL
[ ]     BY FACSIMILE WITH PERMISSION


Dated:       Brooklyn, New York
             July 27, 2018

                            ___s/_____
                            MICHAEL HUESTON, ESQ.
                            *Attorney for Defendant*
                            16 Court Street, Suite 1800
                            Brooklyn, New York 11241
                            (718) 246-2900